IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY RAY BAKER,<br><br>              Plaintiff,<br><br>       v.<br><br>J. LYNCH, et al.,<br><br>              Defendants. | No.  2:19-CV-2617-KJM-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is plaintiff's motion for preliminary injunctive relief (ECF No. 2).

**I. PLAINTIFF'S ALLEGATIONS**

This action proceeds on plaintiff's original complaint. Plaintiff names the following as defendants: (1) J. Lynch; (2) J. Howard; (3) J. Frederick; (4) D. Roth; (5) M. Hontz; and (6) A.W. Peterson. See ECF No. 1, pg. 1. According to plaintiff, the events giving rise to the complaint occurred at California State Prison – Sacramento (CSP-Sac.). See id. Plaintiff presents three claims.

/ / /

/ / /

1     In his first claim, plaintiff alleges defendant J. Howard wrote a racially biased
2 "Informational Chrono" which contained false and fabricated concerns about plaintiff being
3 aggressive and agitated whenever she (J. Howard) was near him. Id. at 3. According to the
4 Informational Chrono, J. Howard stated she was in fear for her safety in plaintiff's presence
5 because plaintiff has a history of mental illness and incidents of assaulting staff. See id. Plaintiff
6 also states the Informational Chrono improperly referenced his "convictions against women" and
7 a "history of aggression against women (commitment offenses)." Id. Plaintiff alleges defendant
8 Howard's statement are "tantamount to discriminatory racial bias and defamation of character."
9 Id. Plaintiff claims defendant Howard "created a pattern of false safety concerns amongst female
10 employees. . . ." Id. Plaintiff states that he has never assaulted a female prison staff member and
11 that his commitment offense involved one woman – his estranged wife – and not a history of
12 aggression toward women. See id. According to plaintiff, J. Howard's conduct has resulted in
13 unnecessary and arbitrary extra security precautions when plaintiff is involved with staff. See id.
14 at 4. This, plaintiff states, in turn has resulted in difficulty obtaining medical appointments.

15     Plaintiff also claims defendant Howard's conduct is racially motivated because
16 plaintiff is black and defendant Howard is white. See id. at 5. Plaintiff alleges defendant Howard
17 has a personal dislike for plaintiff and suggests this may be due to his race. See id. Finally,
18 plaintiff alleges defendant Howard's conduct was in retaliation for plaintiff having filed a staff
19 complaint against her for failing to assist him in preparing for a parole hearing. See id.

20     Accompanying plaintiff's first claim is a copy of a December 1, 2016, form
21 "CDC-128B," also known as an "Informational Chrono," completed by defendant Howard. See
22 id. at 7. In this form, defendant Howard describes an incident that same day in which plaintiff
23 became belligerent after defendant Howard completed a "Form 22" which denied plaintiff credit
24 restoration. See id. According to defendant Howard: "Baker became belligerent and started to
25 cuss at me saying 'Fuck that Bitch' and 'She a racist Bitch.'" Id.
26 ///
27 ///
28 ///

In his second claim, plaintiff alleges that, on November 21, 2019, defendant Howard and defendants Hontz and Roth – all members of the Classification Committee – denied him access to the C Yard "solely because of the 128-A-B that CCI J. Howard fabricated falsely against me on December 1, 2016. . . ." Id. at 13.  According to plaintiff, he was denied access to C Yard programs due to the false safety concerns outlined by defendant Howard.  In a one-page declaration accompanying plaintiff's second claim, plaintiff appears to state that defendants J. Frederick and A.W. Peterson was also members of the Classification Committee that met on November 21, 2019.  See id. at 6.  In this declaration, plaintiff states that defendants conspired to put his health and safety in danger by requiring him to be housed on B Yard instead of C Yard. See id.  Plaintiff states B Yard is dangerous and violent, with three known murders occurring in a 30-day span.  See id.  Plaintiff states the Classification Committee defendants knew that B Yard was a hotbed of gang warfare.  See id.  Plaintiff claims defendants' conduct was based on the Informational Chrono fabricated by defendant Howard.  See id.  According to plaintiff, while on B Yard he was violently attacked by other inmates on December 2, 2019.  See id. at 16.

In his third claim, plaintiff claims that he has not been assigned to any groups, work, or other rehabilitative activities since arriving on B Yard.  See id. at 19.  Plaintiff also states that he has not had access to adequate medical treatment.  See id.  Other than again mentioning defendant Howard's alleged fabrication of the Informational Chrono, plaintiff does not name any defendants with respect to his third claim.

## II. DISCUSSION

The legal principles applicable to requests for injunctive relief, such as a temporary restraining order or preliminary injunction, are well established.  To prevail, the moving party must show that irreparable injury is likely in the absence of an injunction.  See Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing Winter v. Natural Res. Def. Council, Inc., 129 S.Ct. 365 (2008)).  To the extent prior Ninth Circuit cases suggest a lesser standard by focusing solely on the possibility of irreparable harm, such cases are "no longer controlling, or even viable."  Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 559 F.3d 1046,

3

1  1052 (9th Cir. 2009).  Under Winter, the proper test requires a party to demonstrate: (1) he is
2  likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of an
3  injunction; (3) the balance of hardships tips in his favor; and (4) an injunction is in the public
4  interest.  See Stormans, 586 F.3d at 1127 (citing Winter, 129 S.Ct. at 374).  The court cannot,
5  however, issue an order against individuals who are not parties to the action.  See Zenith Radio
6  Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 112 (1969).   Moreover, if an inmate is seeking
7  injunctive relief with respect to conditions of confinement, the prisoner's transfer to another
8  prison renders the request for injunctive relief moot, unless there is some evidence of an
9  expectation of being transferred back.  See Prieser v. Newkirk, 422 U.S. 395, 402-03 (1975);
10 Johnson v. Moore, 948 F.3d 517, 519 (9th Cir. 1991) (per curiam).

11          In his complaint, plaintiff alleges various constitutional violations arising from an
12 Informational Chrono completed in 2016 and his placement on B Yard in 2019.  In his motion for
13 injunctive relief, plaintiff states that he has experienced harassment and retaliation by correctional
14 officers since filing this lawsuit.  See ECF No. 2.  According to plaintiff, prison officials are
15 acting in order to "stop me from continuing with my suit."  Plaintiff dos not describe the nature of
16 the alleged harassment and retaliation.  Nor does plaintiff say who is allegedly harassing him or
17 retaliating against him.  Id.  Plaintiff seeks a temporary restraining order directed at defendants to
18 this case to "stop the harassment of the plaintiff and provide the plaintiff access to legal materials
19 and access to the law lib[rary]."  Id.

20          The Court finds that preliminary injunctive relief is not warranted.  First, plaintiff
21 has not demonstrated that he is likely to succeed on the merits of his claims.  As discussed on the
22 accompanying order, while plaintiff has stated some cognizable claims, other claims are not
23 adequately pleaded.  Further, stating a cognizable claim does not mean that plaintiff is likely to
24 prevail on that claim.

25          Second, plaintiff has not demonstrated that he is likely to suffer irreparable injury
26 absent an injunction.  Specifically, plaintiff's injury appears at this point to be speculative.
27 Moreover, any injury resulting from harassment or retaliation by prison officials since plaintiff
28 filed this lawsuit can be remedied by way of a separate civil action.  And, as indicated above,

4

plaintiff fails to describe the nature of the alleged harassment and retaliation such that the Court can determine whether the possibility of an irreparable injury is implicated.

Third, the Court cannot issue injunctive relief directed at parties who are not defendants to the underlying action. Here, plaintiff's motion references harassment and retaliation by unspecified prison officials who may or may not be named defendants.

### III.  CONCLUSION

Based on the foregoing, the undersigned recommends that plaintiff's motion for injunctive relief (ECF No. 2) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  July 29, 2020

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE