**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TIMOTHY RAY BAKER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>J. LYNCH, et al.,<br><br>　　　　Defendants. | No. 2:19-CV-2617-KJM-DMC-P<br><br><br>FINDINGS AND RECOMMENDATIONS |

　　　　Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is plaintiff's civil rights complaint (ECF No. 1).

　　　　The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it

rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the court to conduct the screening required by law when the allegations are vague and conclusory.

## I.  PLAINTIFF'S ALLEGATIONS

In its July 29, 2020, screening order, the Court summarizes plaintiff's factual allegations as follows:

> Plaintiff names the following as defendants: (1) J. Lynch; (2) J. Howard; (3) J. Frederick; (4) D. Roth; (5) M. Hontz; and (6) A.W. Peterson. See ECF No. 1, pg. 1. According to plaintiff, the events giving rise to the complaint occurred at California State Prison – Sacramento (CSP-Sac.). See id. Plaintiff presents three claims.
>
> In his first claim, plaintiff alleges defendant J. Howard wrote a racially biased "Informational Chrono" which contained false and fabricated concerns about plaintiff being aggressive and agitated whenever she (J. Howard) was near him. Id. at 3. According to the Informational Chrono, J. Howard stated she was in fear for her safety in plaintiff's presence because plaintiff has a history of mental illness and incidents of violence against women. See id. Plaintiff also states the Informational Chrono improperly referenced his "convictions against women" and a "history of aggression against women (commitment offenses)." Id. Plaintiff alleges defendant Howard's statement are "tantamount to discriminatory racial bias and defamation of character." Id. Plaintiff claims defendant Howard "created a pattern of false safety concerns amongst female employees. . . ." Id. Plaintiff states that he has never assaulted a female prison staff member and that his commitment offense involved one woman – his estranged wife – and thus does not constitute a history of aggression toward women. See id. According to plaintiff, J. Howard's conduct has resulted in unnecessary and arbitrary extra security precautions when plaintiff is involved with staff. See id. at 4. This, plaintiff states, in turn has resulted in difficult obtaining medical appointments.
>
> Plaintiff also claims defendant Howard's conduct is racially motivated because plaintiff is black and defendant Howard is white. See id. at 5. Plaintiff alleges defendant Howard has a personal dislike for plaintiff and suggests this may be due to his race. See id. Finally, plaintiff alleges defendant Howard's conduct was in retaliation for plaintiff having filed a staff complaint against her for failing to assist him in preparing for a parole hearing. See id.
>
> Accompanying plaintiff's first claim is a copy of a December 1, 2016, form "CDC-128B," also known as an "Informational Chrono," completed by defendant Howard. See id. at 7. In this form, defendant Howard describes an incident that same day in which plaintiff became belligerent after defendant Howard completed a "Form 22" which

> denied plaintiff credit restoration. See id. According to defendant Howard: "Baker became belligerent and started to cuss at me saying 'Fuck that Bitch' and 'She a racist Bitch.'" Id.
>
> In his second claim, plaintiff alleges that, on November 21, 2019, defendant Howard and defendants Hontz and Roth – all members of the Classification Committee – denied him access to the C Yard "solely because of the 128-A-B that CCI J. Howard fabricated falsely against me on December 1, 2016. . . ." Id. at 13. According to plaintiff, he was denied access to C Yard programs due to the false safety concerns outlined by defendant Howard. In a one-page declaration accompanying plaintiff's second claim, plaintiff appears to state that defendants J. Frederick and A.W. Peterson was also members of the Classification Committee that met on November 21, 2019. See id. at 6. In this declaration, plaintiff states that defendants conspired to put his health and safety in danger by requiring him to be housed on B Yard instead of C Yard. See id. Plaintiff states B Yard is dangerous and violent, with three known murders occurring in a 30-day span. See id. Plaintiff states the Classification Committee defendants knew that B Yard was a hotbed of gang warfare. See id. Plaintiff claims defendants' conduct was based on the Informational Chrono fabricated by defendant Howard. See id. According to plaintiff, while on B Yard he was violently attacked by other inmates on December 2, 2019. See id. at 16.
>
> In his third claim, plaintiff claims that he has not been assigned to any groups, work, or other rehabilitative activities since arriving on B Yard. See id. at 19. Plaintiff also states that he has not had access to adequate medical treatment. See id. Other than again mentioning defendant Howard's alleged fabrication of the Informational Chrono, plaintiff does not name any defendants with respect to his third claim.

ECF No. 14, pgs. 2-4.

## II.  DISCUSSION

On July 29, 2020, the Court screened plaintiff's complaint, finding that he stated some cognizable claims and other non-cognizable claims. See ECF No. 14.  In the screening order, the Court stated that:

> The Court finds plaintiff states a cognizable claim for retaliation against defendant Howard based on plaintiff's allegations that defendant Howard took adverse action in falsifying an Informational Chrono because plaintiff had filed a staff complaint against her. The Court also finds plaintiff states a cognizable safety claim against the Committee Defendants – Howard, Hontz, Frederick, Peterson, and Roth – based on plaintiff's allegations that these defendants placed him on B Yard despite their knowledge of danger related to ongoing gang warfare.

ECF No. 14, pg. 4.

///

The Court otherwise found plaintiff failed to state any other cognizable claims against any other defendants. As to defendant Lynch, the Court stated:

> Plaintiff alleges defendant Lynch is the prison warden. As such, this is a supervisory defendant. Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may, however, be liable even where such personnel do not overtly participate in the offensive act. See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).
> When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 662 U.S. at 676. Here, plaintiff's complaint is devoid of any allegations specific to defendant Lynch. Plaintiff will be provided an opportunity to amend.

ECF No. 14, pgs. 4-5.

As to the denial of medical care alleged in the complaint, the Court stated:

> In his third claim, plaintiff makes a reference to the denial of adequate medical care since being assigned to B Yard. The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and

4

> wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.
>
> Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).
>
> The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.
>
> Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).
>
> While plaintiff references the denial of adequate medical care since being assigned to B Yard, plaintiff does not link that allegation to any named defendant. To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). Here, because plaintiff does not an actual connection between any named defendant and the denial of adequate medical treatment, plaintiff has failed to allege any of the necessary elements of an Eighth Amendment medical care claim. Plaintiff will be provided an opportunity to amend.

ECF No. 14, pgs. 5-7.

///

///

///

      Finally, as to access to rehabilitative programming, the Court stated:

> Plaintiff claims defendants' conduct, specifically his placement on B Yard, denied him access to work assignments and other rehabilitative programming. This claim is not cognizable as a matter of law because prisoners have no constitutional right to access to vocational and rehabilitative programs. See Hoptowit v. Ray, 682 F.2d 1237, 1254-55 (9th Cir. 1995).

ECF No. 14, pg. 7.

      The Court granted plaintiff leave to amend his complaint and warned that "if no amended complaint is filed within the time allowed [], the Court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims." Id. at 7. To date, plaintiff has not filed an amended complaint. Therefore, the Court now recommends dismissal of all claims against defendant Lynch, as well as plaintiff's claims related to medical care and access to rehabilitative programming.

### III. CONCLUSION

      Because it does not appear possible that the deficiencies identified herein can be cured by amending the complaint, plaintiff is not entitled to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).

      Based on the foregoing, the undersigned recommends that:

      1.    This action shall proceed on: (a) plaintiff's First Amendment retaliation claim against defendant Howard; and (b) plaintiff's Eighth Amendment safety claim against defendants Howard, Hontz, Frederick, Peterson, and Roth;

      2.    All claims against defendant Lynch be dismissed; and

///

///

///

///

///

3. Plaintiff's claims related to medical care and access to rehabilitative programming be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 14, 2020

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE