# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY RAY BAKER, | No. 2:19-CV-2617-KJM-DMC-P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| J. HOWARD, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action under 42 U.S.C. § 1983. Before the Court is Defendants' motion to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 25. The Court, on February 10, 2021, granted Plaintiff a 60-day extension of time to reply to Defendants' motion. ECF No. 30. Plaintiff's response was due April 11, 2021. See id. Plaintiff filed an opposition on May 14, 2021. ECF No. 33. Plaintiff filed the opposition out of time and the Court declines to consider it. For the reasons discussed below, the undersigned United States Magistrate Judge recommends that the District Court deny Defendants' motion to dismiss. The Court will grant Plaintiff an opportunity to amend his complaint to clarify ambiguities discussed below.

/ / /

/ / /

/ / /

1

# I. BACKGROUND

## A. Plaintiff's Allegations:

Plaintiff initially brought suit against six defendants. See ECF No. 1 at 1. In the light of the undersigned's prior screening order and findings and recommendations and the District Court's order limiting Plaintiff's claims, this case proceeds against five defendants. See ECF Nos. 14, 18, 31. The five relevant defendants are: (1) J. Howard, (2) J. Frederick, (3) D. Roth, (4) M. Hontz, and (5) A.W. Peterson. The case proceeds on Plaintiff 's First Amendment retaliation claims and Eighth Amendment failure to protect claims. ECF Nos. 1 at 3, 13, 19; 31 at 2.

Howard, an employee of the California Department of Corrections and Rehabilitation (CDCR),[1] allegedly wrote racially biased "informational chronos" falsely stating that Plaintiff was aggressive whenever Plaintiff was in Howard's company.[2] ECF No. 1 at 3. Howard noted that she feared for her safety because Plaintiff had a history of assaulting staff and because of Plaintiff's criminal convictions of violent offenses against women. Id. Plaintiff contends that, in alleging Plaintiff was violent against women, Howard meant white women. Id. at 4.

Plaintiff contends that Howard wrote the chronos out of racial animus, dislike of Plaintiff, and out of retaliation for Plaintiff's filing a complaint against her. Id. at 3–5. Plaintiff argues that he has no history of violence against multiple women and was only convicted of violence against one woman. Id. at 3. Plaintiff asserts that he was convicted of attempted murder of his estranged wife. Id. Howard's false chrono instigated a pattern of false safety concerns among female CDCR employees. Id. Consequently, Plaintiff is restricted under unnecessary and arbitrary security precautions in the presence of female staff. See id. at 4. The arbitrary conditions have, in turn, made it difficult for Plaintiff to attend medical appointments and receive sufficient care. Id.

---

[1] The exact nature of Defendant Howard's employment is unclear. Plaintiff refers to her as CCI J. Howard, which possibly indicates that Howard is a Correctional Counselor. E.g., ECF No. at 3.

[2] For the purposes of clarity, the Court notes that Plaintiff specifically contends that Howard issued racially biased CDCR 128-A and 128 B chronos. ECF No. 1 at 3. A CDCR 128–A counseling chrono is issued if an inmate's minor misconduct reoccurs after counseling, or to document an inmate's minor misconduct. Cal. Code Regs. tit. 15, § 3312(a)(2); Heilman v. Furster, No. CV 15–9987 JVS (FFM), 2018 WL 2588900, at *10 (C.D. Cal. May 1, 2018) (citing In re Perez, (2016) 7 Cal. App. 5th 65, 75 n.6). CDCR 128-B chronos are apparently issued to document information about inmates and their behavior. See, e.g., Cal. Code Regs. tit. 15, § 3000; Heilman, 2018 WL 2588900, at *10; In re Alvarez, (2013) 222 Cal. App. 4th 1064, 1079 n.7. Based on the parties' vocabulary, the Court may refer to these documents collectively as "informational chronos." See ECF Nos. 1 at 3; 25 at 7.

Plaintiff attaches a copy a chrono to his complaint. Id. at 14. In the chrono, Howard noted that Plaintiff became belligerent when Howard denied restoration of credits. Id. Plaintiff cursed at Howard, saying "Fuck that [b]itch" and "She a racist [b]itch." Id. Plaintiff believed that Howard delayed processing Plaintiff's requests and was disrespectful towards Plaintiff because she is racist. Id. Howard concluded that Plaintiff was paranoid that all white officers were out to get him, abused the appeals system, and spoke disrespectfully to her whenever Plaintiff did not get what he wanted. Id. She expressed fear for her safety because Plaintiff has a history of aggression against women, has mental health problems, and possesses a cane that he could use to harm her. Id.

Plaintiff lodges his second claim against Howard, Roth, Hontz, J. Frederick, and A.W. Peterson. Id. at 6, 13. Hontz is apparently a correctional counselor. See id. at 13. Roth is a correctional officer. See id. Howard, Roth, and Hontz are members of the Institutional Classification Committee (ICC). See id. at 8–13. Plaintiff contends that Howard, Roth, and Hontz denied Plaintiff access to a "program on C Yard" because of the chrono that Howard wrote. Id. at 13. The false security concerns precipitated the denial. Id.

In a declaration that appears to support his second claim, Plaintiff seems to state that Frederick and Peterson were also members of the ICC. See id. at 6. In Plaintiff's view, Defendants all put his health and safety in danger assigning him to B Yard instead of C Yard. See id. B Yard is dangerous, with three murders occurring in a 30-day span. See id. at 6, 16. An inmate allegedly beat another inmate unconscious against Plaintiff's cell door. Id. at 16. B Yard poses an additional danger, in Plaintiff's view, because he is disabled and B Yard houses violent gang members from whom he cannot protect himself. See id. at 16. Defendants assertedly knew of the danger B Yard posed, and they knowingly undertook a campaign of racial discrimination against Plaintiff based on Howard's information chrono. See id. Plaintiff contends that Defendants collectively conspired against him. See id. at 6, 15–17. In implementing the ICC decision transferring him to B Yard, Defendants enforced an arbitrary decision and knowingly disregarded serious risks to his health and safety. Id. at 6, 15–17. Defendants also allegedly misled Plaintiff about the programs available to prisoners assigned to B Yard. Id. at 6.

///

3

Finally, in his third claim, Plaintiff complains that he has not been assigned to any groups, work, or other rehabilitative activities since arriving on B Yard. Id. at 19. Plaintiff repeats his allegation that he lacks access to satisfactory medical care. See id. Plaintiff does not name any specific defendant other than to again allege that Howard racially discriminated against him by issuing fraudulent informational chronos. Id. Ostensibly, Plaintiff contends that the false chrono has limited his access to work, medical care, and rehabilitative activities.[3] See id.

**B. Plaintiff's Allegations Concerning Administrative Remedies:**

Plaintiff submitted his complaint on the Court's standard form for actions under § 1983. See id. at 1. The standard form, for each claim alleged, asks plaintiffs four questions about administrative remedies (e.g., grievance procedures available to prisoners). See id. at 3, 13, 19. Those questions inquire whether administrative remedies are available at the relevant penal institution; whether the plaintiff submitted a request for administrative relief for a given claim; whether the plaintiff appealed the request to the high lest of administrative review; and, if the plaintiff did not request administrative relief or appeal a request to the highest level of review, why they did not do so. See id.

For each of his three claims, Plaintiff notes that his prison—California State Prison, Sacramento (CSP-SAC)—provides administrative remedies for inmates. See id. Plaintiff indicates that he submitted a request for administrative relief for each of his three claims. See id. He writes that the requests are pending. Id. He did not, however, appeal them to the highest level. Id. Presumably, his initial requests were denied. See id.

Plaintiff contends that he could not complete the administrative relief process. Id. He writes that he fears for his life, health, and safety. Id. Finally, he notes that the appeal process is pending and too arduous to complete. Id.

---

[3] Plaintiff asserts claims related to medical care and rehabilitative programs. E.g., ECF No. 1 at 4, 19. The Court, in its screening order, dismissed the claims with leave to amend because Plaintiff had not stated a claim for inadequate medical care under the Eighth Amendment. ECF No. 14 at 6–7. Plaintiff did not amend, and the Court issued findings and recommendations proposing that the case proceed on Plaintiff's other, viable claims. ECF No. 18 at 6. The District Court adopted the findings and recommendations, ordering that the medical care and rehabilitative program claims were dismissed. ECF No. 31 at 2. The Court here notes Plaintiff's allegations of substandard medical care *only* to the extent that they might relate to Plaintiff's live claims (e.g., the alleged consequences of Howard's informational chronos regarding Plaintiff).

4

**C. Defendant's Allegations Concerning Administrative Remedies:**

Defendants note, correctly, that Plaintiff filed a motion requesting leave to file this action without exhausting his pending administrative remedies. ECF Nos. 3; 25 at 8. Plaintiff noted that he feared for his safety because of his assignment to B Yard. ECF Bo. 3 at 1. He argued that his health and safety were in danger in the light of his allegations—racial animus, harassment, bias, discrimination, etc. Id. Plaintiff requested a temporary restraining order. Id. at 2. This Court denied the motion as unnecessary, noting that Plaintiff did not require permission to file his complaint. ECF No. 15. The Court, however, stated that its authorization to file a complaint did *not* constitute satisfaction or waiver of Plaintiff's obligations to exhaust administrative remedies. Id. at 2.

## II. STANARD OF REVIEW

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93–94 (2007). The Court must also construe the alleged facts in the light most favorable to the plaintiff. See Benavidez v. County of San Diego, 993 F.3d 1134, 1144 (9th Cir. 2021). Legally conclusory statements not supported by actual factual allegations need not be accepted. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972); see Litmon v. Harris, 768 F.3d 1237, 1241 (9th Cir. 2014).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555–56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials outside the complaint and pleadings. See United States v. Corinthian Colls., 655 F.3d 984, 998–99 (9th Cir. 2011). The court may, however, consider materials submitted with and attached to a complaint. Beverly Oaks Physicians Surgical Ctr., LLC v. Blue Cross & Blue Shield of Illinois, 983 F.3d 435, 439 (9th Cir. 2020); Corinthian Colls., 655 F.3d at 999. Courts may also consider "judicial notice of matters of public record." Beverly Oaks, 983 F.3d at 439. Finally, the Court may consider evidence not attached to the complaint but on which the complaint relies, if "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." Corinthian Colls., 655 F.3d at 999.

In regard to exhaustion in civil rights cases, as noted below, exhaustion is an affirmative defense that must be pled and proven. See Albino v. Baca, 747 F.3d 1162, 1166, 1168–69 (9th Cir. 2014) (en banc). A defendant must produce evidence proving a plaintiff's failure to exhaust administrative remedies. See id. Dismissal under Federal Rule of Civil Procedure 12 will, accordingly, usually be an inappropriate vehicle to terminate a case on exhaustion grounds. See id. Instead, a motion for summary judgment under Rule 56 provides the correct mechanism if undisputed evidence on the record indicates that a plaintiff failed to exhaust their administrative remedies. Id. In rare circumstances, however, a plaintiff's failure to exhaust may clear from the face of a complaint. Id. at 1166, 1169. A motion to dismiss under Rule 12(b)(6) for failure to state a claim is appropriate in that circumstance. Id.

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995); see Lopez v. Smith, 203 F.3d 1122, 1126–27 (9th Cir. 2000)

/ / /

/ / /

6

## III. DISCUSSION

Defendants move to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 25. They allege four grounds for dismissal. Id. at 10–19. Defendants contend that Plaintiff failed to exhaust his administrative remedies, that Plaintiff has not stated a claim under the Eighth Amendment, that they are entitled to qualified immunity, and that the Eleventh Amendment bars this suit. Id.

### A. Exhaustion:

#### 1. Exhaustion Requirements:

The Prison Litigation Reform Act (PLRA) requires prisoners seeking relief under § 1983 to exhaust all available administrative remedies prior to bringing suit. See 42 U.S.C. § 1997e(a); Manley v. Rowley, 847 F.3d 705, 711 (9th Cir. 2017). Exhaustion is mandatory. E.g., Ross v. Blake, 136 S. Ct. 1850, 1856–57 (2016); Jones v. Block, 549 U.S. 199, 211 (2007); Soto v. Sweetman, 882 F.3d 865, 869–70 (2018). Inmate plaintiffs must exhaust available remedies prior to filing suit. Andres v. Marshall, 867 F.3d 1076, 1078 (9th Cir 2017); McKinney v. Carey, 311 F.3d 1198, 1199–1201 (9th Cir. 2002). Exhausting administrative remedies while an action is pending does not satisfy § 1997(e). Andres, 867 F.3d at 1078; McKinney, 311 F.3d at 1199–1201; see Cano v. Taylor, 739 F.3d 1214, 1220 (9th Cir. 2014).

The Supreme Court addressed the exhaustion requirement in Jones v. Block. The Court made three relevant holdings. First, prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense that defendants must plead and prove. Jones, 549 U.S. at 216. Second, individuals named as defendants in a complaint do not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA. Id. at 217–19. Third, the PLRA does not require dismissal of an entire complaint if some, but not all, claims are unexhausted. Id. at 219–24.

The defendant bears burden of showing non-exhaustion in the first instance. See Albino, 747 F.3d at 1171–72. If a defendant meets their burden, the burden shifts to the plaintiff to show that the grievance process was effectively unavailable. See id. But there are no special

circumstance exceptions to the exhaustion requirement. Ross, 136 S.Ct. at 1856–62. The PLRA does not authorize courts to look to the particulars of a case to determine if circumstances excuse a failure to exhaust. See id. at 1856–58. A plaintiff's chance to show that the administrative process was unavailable constitutes PLRA's own, written exception. See id. at 1858. A plaintiff *must* exhaust available administrative remedies but need not exhaust *unavailable* remedies. Id. Put another way, inmates are obligated to exhaust only those grievance procedures "capable of use" to obtain some relief for the conduct that the inmate challenges. Id. at 1859. An administrative remedy might be unavailable when procedures operate to a "dead end" and officials do not actually provide relief, when an administrative scheme is so complex that inmates cannot use it, or when officials simply thwart the grievance process. Id.

The PLRA requires "proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2007); Merchant v. Corizon Health, Inc., 993 F.3d 733, 742 (9th Cir. 2021). Inmates must comply with the deadlines and "critical procedural rules" of a prison's administrative relief system. Woodford, 548 U.S. at 91, 95; Merchant, 933 F.3d at 742. This means that an inmate must use all the steps that a prison employs in its grievance process, permitting the prison a chance to reach the merits of the grievance and correct its own errors. Woodford, 548 at 90–91, 94; see Fuqua v. Ryan, 890 F.3d 838, 844–45 (9th Cir. 2018); Reyes v. Smith, 810 F.3d 654, 657 (9th Cir. 2016). When reviewing exhaustion under California prison regulations, which have since been amended, the Ninth Circuit observed that, substantively, a grievance is sufficient if it "puts the prison on adequate notice of the problem for which the prisoner seeks redress." Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010); see Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009).

Until June 1, 2020, California allowed inmates to administratively appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs., tit. 15, § 3084.1(a) (repealed 2020); Munoz v. Cal. Dep't of Corrs., No. CV 18-10264-CJC (KS), 2020 WL 5199517, at *6 (C.D. Cal. July 24, 2020). CDCR used a three-step process for grievances. Munoz, 2020 WL 519917, at *6 (describing the former three-step process). CDCR now uses a two-step process. See Cal. Code Regs., tit. 15, §§ 3480–87.

8

Broadly described, under the former three-step process, prisoner had to submit a form to the appeals coordinator of the prison where his claims arose. Munoz, 2020 WL 519917, at *6. If the inmate did not receive relief at the first level, he had to submit a second-level appeal. Id. If the inmate did not receive adequate relief at the second level, he had to submit a third level appeal to the Office of Appeals in Sacramento. Id. Reaching a decision at the third level of review would exhaust administrative remedies. Id.; see Reyes v. Smith, 810 F.3d 654, 657 (9th Cir. 2016).

**2. Plaintiff Alleges an Exhaustion Exception**

Plaintiff filed this action on December 26, 2019. ECF No. 1. The administrative relief provisions in effect prior to June 1, 2020, thus govern Plaintiff's case. See Munoz, 2020 WL 519917, at *6; ECF No. 25 at 11 n.3. Plaintiff, however, concedes that he did not exhaust administrative remedies. As noted above, on the face of his complaint, Plaintiff thrice admits that he did not appeal his requests for relief (e.g., relief from Howard's alleged falsification of information chronos) to the highest level. ECF No. 1 at 3, 13, 19. He specifically writes "DUE TO ONGOING FEARS OF MY LIFE, HEALTH & SAFETY CONCERNS. HERE AT CSP-SACRAMENTO. 602 APPEAL PENDING & ARDUOUS." Id. at 3, 13.

Defendants succinctly argue that this case cannot proceed because Plaintiff admits that he failed to exhaust available administrative remedies. ECF No. 25 at 12. In Defendants' view, permitting the action to proceed would be akin to recognizing an impermissible "special circumstance" excusing Plaintiff's non-exhaustion. Id. Defendants contend that Plaintiff fails to argue in favor of the only available exception—that the administrative relief process was unavailable. See id. Thus, in their view, the case must be dismissed. Id.

First, Plaintiff's fears for his safety and health do not excuse failure to exhaust administrative remedies. See, e.g., Ross, 136 S.Ct. at 1856–62. The PLRA contains one exception to the exhaustion requirement—availability. Id. at 1858. Although concerning, special circumstances like Plaintiff's fear for his safety do not qualify (at least, unless those fears render administrative procedures unavailable).[4] See id. at 1858–62; Fuqua, 890 F.3d at 849–50 & n. 11

---

[4] The United States Supreme Court has stated that prison officials might render administrative unavailable for PLRA purposes if they prevent access to the relief process through intimidation, machination, or misrepresentation. Ross, 136 S.Ct. at 1860; Fuqua, 890 F.3d at 849 n.11. Plaintiff has alleged that Defendants have falsified documents against him,

9

Second, Defendants do not sufficiently credit Plaintiff's statements in his complaint. Plaintiff specifically states that the appeals process is arduous, which can be read as an argument implying the administrative relief process is prohibitively complex. See ECF No. 1 at 3, 13, 19. An administrative relief process that is so complex that it is practically unavailable to ordinary inmates satisfies the PLRA's availability exception. See Ross, 136 S.Ct. at 1859.

Plaintiff's statements in his complaint that CSP-Sac's grievance process is "arduous" are sufficient to survive a motion to dismiss under 12(b)(6). Although Plaintiff's statements are basic and may not survive a motion under which Plaintiff faces a higher burden, the Court must construe Plaintiff's complaint liberally. E.g., Litmon, 768 F.3d at 1241. And, when deciding this 12(b)(6) motion, the Court must accept the complaint's factual allegations as true and construe them in the light most favorable to Plaintiff. Benavidez, 993 F.3d at 1144. The Court must draw any reasonable inferences from the complaint in Plaintiff's favor. See, e.g., Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 945 (9th Cir. 2014).; Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661, 663 (9th Cir. 1998). Thus, taking Plaintiff's assertions as true and drawing appropriate inferences in his favor, the Court concludes that Plaintiff has sufficiently alleged that CSP-Sac's administrative relief process is so arduous as to be unavailable to him.

Insofar as Defendants allege failure to exhaust, the undersigned United States Magistrate Judge recommends denying Defendants' motion to dismiss without prejudice to renewal as a motion for summary judgment at the appropriate time. Defendants may then provide evidence that Plaintiff failed to exhaust administrative remedies. E.g., Albino, 747 F.3d at 1166, 1168–69.

///

///

///

---

placed him under arbitrary security conditions, and discriminated against him. See generally ECF No. 1. But he does not actually allege that Defendants hindered his access to CSP-Sac's administrative relief process. See id. Indeed, he admits he at least pursued administrative remedies at the first level. See id. at 3, 13, 19. And Howard allegedly retaliated against Plaintiff *because* he filed a complaint against her. E.g., id. at 5. Without more—and because Plaintiff has not submitted any opposition alleging as much—Plaintiff has not shown or argued that Defendants themselves rendered administrative remedies unavailable to him.

**B. The Eighth Amendment:**

Defendants argue that Plaintiff fails to state an Eighth Amendment claim related to his assignment to B Yard. ECF No. 25 at 13. Defendants contend that Plaintiff has not shown that they neglected a duty to protect Plaintiff from physical abuse. Id. In their view, Plaintiff's complaint does not sufficiently allege a substantial risk of harm, an excessive risk that Defendants knowingly disregarded, or actual or specific harm. Id. at 13–15. Plaintiff, as already noted, did not file a timely opposition. The Court refers only to his complaint and incorporated documents.

**1. Eighth Amendment Standard:**

The Eighth Amendment requires prison officials to protect inmates from violence. Farmer v. Brennan, 511 U.S. 825, 833 (1994); Wilk v. Neven, 956 F.3d 1143, 1147 (9th Cir. 2020). But liability attaches only if an official is aware that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to address it. See Farmer, 511 U.S. at 834, 837, 844–45, 847; Wilk, 956 F.3d at 1147; Labatad v. Corrs. Corp. of Am., 714 F.3d 1155, 1160 (9th Cir. 2013); see also Cortez v. Skol, 776 F.3d 1046, 1050 (9th Cir. 2015).

Not every injury that a prisoner sustains creates a constitutional violation. Wilk, 956 F.3d at 1147. Put another way, not every injury that a prisoner suffers at the hands of another inmate establishes liability for prison officials who are responsible for prisoners' safety. Id. An inmate bringing a claim under the Eighth Amendment must show a deprivation that is "sufficiently serious." Farmer, 511 U.S. at 834; Lemire v. California Dep't of Corrs. & Rehabilitation, 726 F.3d 1062, 1074–1075. (9th Cir. 2013). "A deprivation is sufficiently serious when the official's act or omission results in the denial of the minimal civilized measure of life's necessities." Lemire, 726 F.3d at 1074 (quoting Foster v. Runnels, 554 F.3d 807, 812 (9th Cir. 2009)). In the failure to protect context, an inmate must show that they are incarcerated under conditions posing a substantial risk of serious harm. See Farmer, 511 U.S. at 834; Lemire, 76 F.3d at 1075.

Furthermore, a prison official violates an inmate's Eighth Amendment rights only when that official is "deliberately indifferent. Farmer, 511 U.S. at 834–37; Lemire, 726 F.3d at 1074; Labatad, 714 F.3d at 1160. A prison official must have had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. An official must be aware of facts from which they can draw the

inference that a substantial risk of serious harm exists and must also draw the inference. Farmer, 511 U.S. at 837; Cortez, 776 F.3d at 1050; Labatad, 714 F.3d at 1160. The question of deliberate indifference focuses on what a defendant's actual mental attitude. Farmer, 511 U.S. at 835–39. Deliberate indifference exists if a defendant *subjectively* "knows of and disregards an excessive risk to inmate health and safety." Farmer, 511 U.S. at 837–39; Lemire, 736 F.3d at 1074; Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). An official need not, however. have intended that harm befall an inmate. Farmer, 511 U.S. at 842; Lemire, 726 F.3d at 1074. It is enough that an official acted or failed to act even though the official knew of a substantial risk of serious harm. Farmer, 511 U.S. at 842; Lemire, 726 F.3d at 1074. A factfinder may infer subjective awareness from circumstantial evidence. Farmer, 511 U.S. at 842; Wilk, 956 F.3d at 1147. Too, a factfinder may determine that a "prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842.

### 2. Plaintiff States an Eighth Amendment Claim:

Plaintiff establishes a viable Eighth Amendment claim. As the standards above imply, Plaintiff must show two things to establish his failure to protect claim. Plaintiff's complaint must satisfactorily indicate that prison officials were deliberately indifferent to a sufficiently serious threat to the Plaintiff's safety. See Farmer, 511 U.S. at 834–38; Lemire, 726 F.3d at 1074–76; Labatad, 714 F.3d at 1160. Plaintiff has satisfied those elements.

### i. Sufficiently Serious Harm:

Defendants contend that Plaintiff's fails to allege a sufficiently substantial risk of harm. ECF No. 25 at 13. In their view, Plaintiff's allegations that B Yard is a hostile environment give rise to only a generalized fear of attack, not any specific violence against him. Id. Defendants argument is unpersuasive in the light of Plaintiff's complaint. Defendants are correct that purely speculative harms are insufficient. Courts have been skeptical of inmates' allegations of generalized, unsubstantiated fear of harm from other inmates, including gang members. See, e.g., Williams v. Wood, 223 F. App'x 670, 671 (9th Cir. 2007); Contreras v. Collins, 50 F. App'x 351, 351 (9th Cir. 2002); Morrison v. Christensen, Case No. 1:20-cv-00566-DCN; 2021 WL 1061973, at 3–4 (D. Idaho Mar. 19, 2021); Martin v. Her, No. 2: 18-cv-1658 KJN P, 2020 WL 4922490, at

*7 (E.D. Cal. Aug. 21, 2020). But construing, as the Court must, Plaintiff's complaint liberally and drawing appropriate inferences in his favor, Plaintiff has minimally pled a sufficiently serious risk.

Plaintiff's allegations edge quite closely to a generalized fear. As Defendants imply, Plaintiff broadly contends that Defendants ignored that B Yard is a "warzone" experiencing regular bouts of violence from gang members and other violent inmates. E.g., ECF No. 1 at 6, 16–17. But Plaintiff alleges other relevant facts. Plaintiff alleges that three violent murders have been committed in B Yard while he has been assigned there, and that an inmate was beaten unconscious against Plaintiff's cell door. Id. at 6, 16. He also contends that his life is in imminent danger, that Defendants knowingly sent him to a violent unit to punish him, and that he is a high risk, disabled inmate who cannot defend himself against the violent inmates in B Yard.[5] Id. at 13, 16–17.

If only just, Plaintiff has pled a sufficiently serious deprivation. Plaintiff has alleged that he is incarcerated under conditions posing a substantial risk of serious harm. See, e.g., Farmer, 511 U.S. at 834, 843–44; Lemire, 726 F.3d at 1074–76; Labatad, 714 F.3d at 1160.

### ii. Deliberate Indifference:

Defendants contend that Plaintiff fails to allege facts satisfying the subjective prong of deliberate indifference. ECF No. 25 at 14. They focus largely on the ICC hearings. Id. at 14–15. Defendants argue that Plaintiff's alleged facts (including the attached ICC determinations assigning Plaintiff to B Yard) indicate that Defendants took affirmative steps to ensure B Yard was safe for Plaintiff. Id. at 14. For example, they initiated an enemy audit that found Plaintiff had no enemies in B Yard. Id. Defendants thus broadly conclude that Plaintiff fails to assert that they were subjectively aware of and ignored a risk to Plaintiff's safety. Id.

///

---

[5] Plaintiff attaches to his complaint copies the ICC's determination that Plaintiff could be assigned to B Yard. ECF No. 1 at 8–11. The Court can consider those documents alongside the complaint. Beverly Oaks, 983 F.3d at 439. One of the ICC determinations notes that Plaintiff informed the ICC that he had enemies in B Yard and could not be housed there. Id. at 10. Prison officials apparently undertook an investigation and found that Plaintiff did not have enemies in B Yard. Id. Defendants ostensibly adopted that finding. See id. But Plaintiff alleges that Defendants knowingly conspired against him even though they knew B Yard was dangerous for Plaintiff. See id. at 6, 13–17. The Court believes it is a reasonable inference from Plaintiff's allegations that Plaintiff believes Defendants knew of and disregarded substantial risks to his safety, irrespective of what the ICC classification says. That inference is relevant to the Court's determination that Plaintiff has stated an Eighth Amendment claim for the purposes of this pending motion to dismiss for failure to state a claim.

13

Defendants' contention is simply untrue. Their selective discussion of the ICC determination disregards the bulk of Plaintiff's complaint. Plaintiff repeatedly alleges that Defendants knew of and ignored serious threats to his safety. ECF No. 1 at 6, 13, 15–17. He asserts that Defendants deliberately discriminated and conspired against him as punishment. Id. The reasonable inference from Plaintiff's allegations is that Defendants' actions through the ICC hearings were pretextual. See id. A straightforward reading of Plaintiff's complaint indicates that Plaintiff alleges both that Defendants were aware of information from which they could draw the conclusion that an excessive risk to Plaintiff's safety existed and that Defendants drew that conclusion. Plaintiff has sufficiently alleged that Defendants subjectively knew of and chose to ignore serious risks to his safety. See Farmer, 511 U.S. at 834–37; Lemire, 726 F.3d at 1074; Labatad, 714 F.3d at 1160.

### iii. Plaintiff Need Not Show Actual Harm:

Defendants suggest that Plaintiff has not pled an "actual or specific harm." ECF No. 25 at 15. His Eighth Amendment claim must consequently fail. Id. The argument holds no water. Plaintiff need not plead an actual harm under the failure to protect standard.

Defendants cite the United States Court of Appeals for the Ninth Circuit's decision in Morgan v. MacDonald, 41 F.3d 1291 (9th Cir. 1994) as support. Morgan is not an Eighth Amendment case. The Ninth Circuit primarily examined whether a Nevada state prisoner, Morgan, was an employee for the purposes of the Fair Labor Standards Act (FLSA). Morgan, 41 F.3d at 1292. That Court, in a concluding paragraph, concisely addressed Morgan's argument that prison officials subjected him to cruel and unusual punishment. Id. at 1293–94. The director of a prison work program allegedly told Morgan that his inmate coworkers would have to be fired from prison work programs if the FLSA claim was successful. Id. Morgan argued that the director should have known that the statement would likely to cause inmates to retaliate against Morgan. Id. at 1294.

The Ninth Circuit wrote that "Morgan's complaint contains no allegations that he was ever subjected to retaliation at the hands of his fellow inmates, nor does it provide any basis for inferring Reid was aware that his actions exposed Morgan to a substantial risk of serious harm." Id. The Court held that Morgan consequently failed to state a claim for damages under the Eighth

Amendment. Id. The Court's statement indicates that Morgan had alleged neither a sufficiently serious harm *nor* that the director was subjectively aware of a risk of harm that he disregarded. See id. (going on to cite Farmer, 511 U.S. at 837). The Ninth Circuit did not state that a plaintiff must plead actual harm.[6] Id.

An Eighth Amendment failure to protect claim involves risk to an inmate, *not necessarily* completed harm. See, e.g., Farmer, 511 U.S. at 834, 837, 843–44; Wilk, 956 F.3d at 1148; Lemire, 726 F.3d at 1074–76; Labatad, 714 F.3d at 1160. A failure to protect claim requires a showing that an official knew of and ignored an "excessive *risk* to inmate health or safety." Farmer, 511 U.S. at 837 (emphasis added). Liability attaches when an official is deliberately indifferent—when the official is subjectively aware of a substantial *risk* of serious harm to an inmate and disregards that threat by failing to appropriately respond. Wilk, 956 F.3d at 1147; Cortez, 776 F.3d at 1050; Lemire, 726 F.3d at 1074–76; Labatad, 714 F.3d at 1160.

Plaintiff has sufficiently alleged a failure to protect claim. He has (if minimally) stated a claim that Defendants were deliberately indifferent in assigning him to the assertedly dangerous B Yard. In other words, he alleges that Defendants subjectively knew that B Yard posed a serious, substantial risk of serious harm to Plaintiff and chose to assign him there anyway.

The undersigned United States Magistrate Judge accordingly recommends denying the motion to dismiss to the extent it argues Plaintiff fails to establish a viable Eighth Amendment claim. The level of harm that Plaintiff actually incurred might, however, go to the relief or quantum of damages to which he may be entitled if he ultimately prevails in his case. The Court will grant Plaintiff an opportunity to amend his complaint in order to clarify whether he suffered any physical or other harm.

/ / /

/ / /

---

[6] In quoting Morgan, Defendants' counsel omits the portion of the Ninth Circuit's holding that states "nor does [Morgan's complaint] provide any basis for inferring [the director] was aware that his actions exposed Morgan to a substantial risk of serious harm." Compare Morgan, 41 F.3d at 1294, with ECF No. 25 at 15. The omitted language is important. Subjective awareness is a necessary part of an Eighth Amendment claim. E.g., Farmer, 511 U.S. at 834–39; Cortez, 776 F.3d at 1050; Lemire, 726 F.3d at 1074. Counsel's selective omission does not endear the Court to Defendants' position.

**D. Qualified Immunity:**

Defendants contend that they are entitled to qualified immunity, which would bar Plaintiff's Eighth Amendment claims.[7] ECF No. 25 at 15–16. Defendants argue that Plaintiff has not established that they violated any constitutional right. Id. They posit that, even if Plaintiff has established a violation, it would not have been clear to a reasonable official that their conduct would violate Plaintiff's clearly established rights. Id. The Court disagrees.

"[G]overnment officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether qualified immunity applies, the Court considers: (1) whether the facts, as Plaintiffs asserts them, establish "a violation of a constitutional right," and (2) whether Plaintiff's right was "clearly established" at the time of the violation. Pearson v. Callahan, 555 U.S. 223, 232 (2009); Sandoval v. County of San Diego, 985 F.3d 657, 671 (9th Cir. 2021) Courts can exercise discretion in deciding which of the two prongs should be addressed first in the light of the circumstances of a given case. Pearson, 555 U.S. at 236.

The Court has already concluded that Plaintiff, under the alleged facts, has established a constitutional violation. The question for the Court is thus whether that right was clearly established. E.g., Sandoval, 985 F.3d at 671; Wilk, 956 F.3d at 1148. The Court resolves this inquiry in the light of the context of the case, not as a general proposition. Mullenix v. Luna, 577 U.S. 7, 12 (2015); Vos v. City of Newport Beach, 892 F.3d 1024, 1035 (9th Cir. 2018). In order to find that the law was clearly established, however, the Court need not locate a case with identical or materially similar facts. Vos, 892 F.3d at 1035; Flores v. Morgan Hill Unified School Dist., 324 F.3d 1130, 1136–37 (9th Cir. 2003). Existing precedent, however, must have placed the constitutional question beyond debate. Vos, 892 F.3d at 1035.

The question is whether the state of the law at the time of the ostensible violation gave Defendants fair warning that their alleged treatment of Plaintiff was unconstitutional. Hope v.

---

[7] Defendants do not specifically say that qualified immunity would bar only Plaintiff's Eighth Amendment claims. ECF No. 25 at 15–16. But those are the only claims that they address with the qualified immunity argument. See id.

Pelzer, 536 U.S. 739, 741 (2002). In other words, the question is "'whether the violative nature of particular conduct is clearly established' in the specific context of the case." Vos, 892 F.3d at 1035 (quoting Mullenix, 577 U.S. at 12). Law is clearly established—for the purposes of qualified immunity analysis—if every reasonable official would have understood that their conduct violated the relevant right. Mullenix, 577 U.S. at 11; Wilk, 956 F.3d at 1148. Prison officials can still be on notice that their actions violate clearly established law even under novel circumstances. Hope, 536 U.S. at 741; Wilk, 956 F.3d at 1148.

The Ninth Circuit has fairly recently discussed clearly established law governing failure to protect claims under the Eighth Amendment. Wilk 956 F.3d at 1148–49 (applying Castro v. County of Los Angeles, 833 F.3d 1060, 1067 (9th Cir. 2016)).[8] "The Supreme Court need not catalogue every way in which one inmate can harm another for [the Court] to conclude that a reasonable official would understand that his actions violated [the Eighth Amendment]." Id. at 1148 (quoting Castro, 833 F.3d at 1067). Once a prison official is subjectively aware of a substantial risk of serious harm, clearly established law requires only that the official take reasonable actions to mitigate risk. Id. at 1148–49. The "contours" of Plaintiff's right were his right to be free from a substantial risk of violence at the hands of other inmates. See Castro, 933 F.3d at 1067.

Defendants contend that no reasonable official would have understood that assigning Plaintiff to B Yard would violate a clearly established constitutional right. But this is not so. Even assuming that there is not a particularly similar case on point, reasonable officials would know (at the time of the alleged violation around 2019) that once they are aware of a substantial risk of harm to an inmate, they must reasonably act to mitigate that harm. See, e.g., Wilk, 956 F.3d at 1148–49; Castro, 833 F.3d at 1067. The Court sees no reason why the facts here would make that conclusion any different. A reasonable official would recognize that the conduct here was unconstitutional. Namely, knowing that a particular unit poses an imminent, substantial, and serious risk of harm to an inmate at the hands of other inmates; appreciating that risk; and disregarding that risk to assign the inmate to the dangerous unit anyway.

---

[8] Castro, decided in 2016, dealt with pretrial detainees. Castro, 833 F.3d at 1064–67. The Ninth Circuit has applied Castro to a convicted prisoner's case under the Eighth Amendment. Wilk, 956 F.3d at 1148–49.

Taking Plaintiff's allegations as true, Defendants cannot feign ignorance to Plaintiff's right to be protected from a substantial risk of harm at the hands of other inmates. See Wilk, 956 F.3d at 1050. That right, in the Ninth Circuit's binding determination, has been clearly established since the Supreme Court handed down its decision in Farmer v. Brennan in 1994. Id.; see King v. Biter, No.: 1:15-cv-00414-NONE-SAB (PC), 2021 WL 392823, at *7–8 (E.D. Cal. Feb. 4, 2021). The Ninth Circuit expressly stated that it is clearly established that prison officials must undertake reasonable measures to abate known substantial risks to inmates. Wilk, 956 F.3d at 1050.  Hence, the undersigned United States Magistrate Judge recommends denying Defendants' motion to dismiss insofar as it alleges that qualified immunity shields Defendants from suit.

**E.  The Eleventh Amendment:**

Defendants include an Eleventh Amendment argument in their motion. ECF No. 25 at 16–17. Defendants contend that it is unclear whether Plaintiff sues them in their personal or official capacities. Although Plaintiff does not state whether he sues Defendants in their personal or official capacity, that is an ambiguity that the Court resolves in Plaintiff's favor. To the extent that Plaintiff *does* sue Defendants in their official capacity, the Eleventh Amendment bars suit. E.g., Will v. Mich. Dep't of State Police, 491 U.S. 58, 66, 71 (1989); Mitchell v. Washington, 818 F.3d 436, 442 (9th Cir. 2016); Pena v. Gardner, 976 F.2d 469, 472 (9th Cir. 1992) (per curiam).

The Court assumes that Plaintiff sues Defendants in their personal capacity, which the Eleventh Amendment does not bar. Mitchell, 818 F.3d at 442. The Court will grant Plaintiff an opportunity to amend his complaint to clarify whether he sues Defendants in their personal or official capacities. If Plaintiff does not file an amended complaint, this case will proceed on the original complaint

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV. RECOMMENDATION

The undersigned United States Magistrate Judge recommends that Defendants' motion to dismiss (ECF No. 25) be **DENIED**. As to Defendants' Eleventh Amendment defense, the undersigned assumes that Plaintiff sues Defendants in their personal capacity and will grant leave for Plaintiff to amend his complaint to clarify whether that is true.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

## V. ORDER

In addition to submitting the above recommendation to the United States District Judge assigned to this case, IT IS HEREBY ORDERED that:

1. The Court grants Plaintiff leave to amend his complaint to clarify (1) whether he suffered any physical or other harm at the hands of other inmates, and (2) whether he brings suit against Defendants in their official or personal capacities;

2. Plaintiff may submit an amended complaint within **30 days** of the date of this order; and

3. If Plaintiff does not submit an amended complaint, this case will proceed on the original complaint.

Dated: May 26, 2021

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE